# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| ANEISSA PETRONGLO | : | |
| 2411 Larchmont Pl | : | |
| Mount Laurel, NJ 08054 | : | |
|              Plaintiff | : | |
| v. | : | |
| | : | |
| THE TRUSTEES OF THE | : | CIVIL ACTION NO. 2:25-CV-04863 |
| UNIVERSITY OF PENNSYLVANIA | : | |
| 3451 Walnut Street, Room 310 | : | Jury Trial Demanded |
| Philadelphia, PA 19104 | : | |
|              Defendant | : | |

_____

## **CIVIL COMPLAINT**

Plaintiff, Aneissa Petronglo, by and through her attorneys, The Derek Smith Law Group, PLLC, hereby bring this civil action against Defendant, The Trustees of the University of Pennsylvania, for harassment, discrimination, and retaliation, all in violation of The Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et. seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §12101 *et. seq.,* as amended by the Americans with Disabilities Amendment Act of 2008 ("ADAA"), the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951 – 963, and violation of Pennsylvania's public policy under Shick v. Shirey, 691 A.2d 511 (Pa. Super Ct. 1997), related to Workers' Compensation retaliation.

Plaintiff alleges and avers in support thereof:

## Parties

1. Plaintiff, Aneissa Petronglo, is an adult female individual, and a practicing Christian, that worked for Defendant, The Trustees of the University of Pennsylvania, as an Associate Director, during times relevant to this litigation and she resides at the above captioned address.

2. Defendant, The Trustees of the University of Pennsylvania, ("Defendant") is a domestic nonprofit corporation residing and duly existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at the above captioned address and was, at all times relevant, the employer of Plaintiff, Jessie Reich, Lisa Sator, Michael Lewis, and Denise Mariotti.

3. Defendant accepted, adopted, acquiesced, and/or otherwise was bound by the actions, omissions, and conduct of its owners, officers, managers, supervisors, employees, and agents, including Jessie Reich, Lisa Sator, Michael Lewis, and Denise Mariotti.

## Jurisdiction and Venue

4. Subject matter jurisdiction is proper before this Court as the case involves a Federal Question, 28 U.S.C. §1331, and the Court has supplemental jurisdiction, 28 U.S.C. §1367, over the state law causes of action.

5. Venue is proper before this Court as Defendant resides, and all actions giving rise to this litigation occurred, in the Eastern District of Pennsylvania.

6. Plaintiff exhausted administrative remedies by having timely dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and Pennsylvania Human Relations Commission ("PHRC"), and having received a Right to Sue and having more than a year transpire since the initial filing.

### Statement of Material Facts

7. Plaintiff worked as an Associate Director for Defendant from April 3, 2023 to July 23, 2024, before she was wrongly terminated.

8. Plaintiff was hired by Defendant's Director of Patient Experience & Magnet Programs, Jessie Reich (female of unknown religion).

9. Plaintiff was supervised throughout her employment by the Director of Experience Support Services, Lisa Sator (female of unknown religion).

10. Lisa Sator reports and/or reported to Jessie Reich.

11. At all times, Plaintiff was qualified and sufficient as an Associate Director, capable of fulfilling the essential functions of the role, with or without reasonable accommodation.

12. Plaintiff is a Christian and at all times, Defendant's employees including Jessie Reich, Lisa Sator, Michael Lewis, and Denise Mariotti were aware of Plaintiff's religion and faith.

13. During her employment, Plaintiff organized a voluntary bible study that met 10 to 15 minutes a week, during a 60 minute lunch break, where employees and co-workers shared difficulties, faith, and bible verses.

14. The bible study grew in numbers, having included Sean Joynes, and for a while the bible study had even met at Defendant's Chapel.

15. Persons that did not participate in the bible study included: Jessie Reich, Lisa Sator, Michael Lewis, and Denise Mariotti.

16. Lisa Sator was overly critical and harsh with her assessment and evaluation of Plaintiff's work and activities.

17. It seemed that almost immediate, upon hire, that Ms. Sator targeted Plaintiff and that negativity, mistreatment, and harassment continued throughout Plaintiff's entire employment.

18. The comments, conduct, and negativity exhibited by Ms. Sator towards Plaintiff was discriminatory and motivated by Plaintiff's gender and religion.

19. At all times, Ms. Sator's harassment of Plaintiff was unwelcome.

20. As an example, and not inclusive of all examples, in January Plaintiff mentioned a male interviewee, Sean Joynes, having done a great job during his interview and that Plaintiff was proud of Mr. Joynes. The following day Ms. Sator took a hostile and aggressive tone with Plaintiff about the comment, repeatedly asking if Mr. Joynes were Plaintiff's "boy?" or her "baby boy?"

21. On Mr. Joynes's first day working as a supervisor, Plaintiff wore a dress, and Ms. Sator questioned Plaintiff over why Plaintiff would wear a dress, and when Plaintiff gave her reasoning that it was Mr. Joynes's first day of work, Ms. Sator accused Plaintiff of trying to "get with him" and called it "weird."

22. At one point, after Sean Joynes was a supervisor, Ms. Sator asked Plaintiff if she wanted Mr. Joynes "on a leash."

23. Ms. Sator also referred to Plaintiff as "sassy," telling Plaintiff to stop being "sassy."

24. Ms. Sator was also objectively dismissive or, at least, not accepting of the bible study, as well as the persons participating.

25. Despite the clear and obvious hostilities Ms. Sator had, showed, and exhibited towards Plaintiff; the Plaintiff was very capable as an Associate Director and nothing bad or troublesome occurred with regard to Plaintiff's work.

26. On February 21, 2024, however, Plaintiff had a work-related injury to her foot, which required medical care and filing of a Workers Compensation claim.

27. Plaintiff's injuries affected her ability to ambulate and stand for long periods of time, and per her doctor, Plaintiff required an accommodation.

28. Plaintiff requested an accommodation, including to work remote, and she provided doctor's notes to Lisa Sator and Senior Human Relations Business Partner, Michael Lewis (male of unknown religion), in furtherance of the request.

29. Michael Lewis had originally told Plaintiff in response to her request to work remote that he "saw no reason" why Plaintiff could not work remote.

30. Defendant, and on information and belief, Ms. Sator denied the accommodation request, without a good faith effort at the interactive process.

31. Plaintiff alleges and believes that working remote would not have caused Defendant an undue hardship, or burden, and Plaintiff was wrongly denied an accommodation in furtherance of discrimination and/or retaliation.

32. Ms. Sator told Plaintiff that it was because she "said so", as the reason for why Plaintiff was not approved or afforded the accommodation.

33. Plaintiff spoke with Defendant's Occupational Health Nurse Practitioner, Heike Wilson, and Ms. Wilson told Plaintiff that Ms. Sator visited multiple times to inquire and ensure Plaintiff was not approved for accommodation.

34. Plaintiff was involuntarily placed on a paid leave of absence.

35. During the leave, Plaintiff was not permitted to do any work.

36. The leave lasted from February 21, 2024 to April 22, 2024.

37. Ms. Sator told Plaintiff that while Plaintiff was on leave, Plaintiff could not speak with any of her reports.

38. On March 14, 2024 Denise Mariotti emailed Plaintiff that she is "prevented from engaging in any duties associated with [her] position. … any violation of that directive would be subject to discipline."

6

39. During Plaintiff's involuntary leave, Ms. Sator was responsible for covering Plaintiff's work. It is alleged and believed that Ms. Sator made herself responsible for covering the work while Plaintiff was on leave.

40. No work was done and Plaintiff's work grew to a substantial back-pile.

41. When Plaintiff returned to work, Lisa Sator and Michael Lewis met with Plaintiff and placed Plaintiff on what they referred to as a "re-integration plan."

42. A "re-integration plan" is not something generally recognized in Defendant's policies or procedures, nor is it required of a 60 day leave of absence.

43. The "re-integration plan", as described and put in operation, was essentially a new employee orientation, which required weekly meetings where Ms. Sator harassed, abused, and was overly critical of Plaintiff using unrealistic expectations and criteria for the work to be completed in the time.

44. Plaintiff was accused and questioned at these meetings over work that was complete, and work that was not Plaintiff's responsibility.

45. Plaintiff had no disciplinary history and good work performance up.

46. On May 13, 2024 Plaintiff submitted a formal written complaint to the Director of Patient Experience and Magnet Programs, Jessie Reich, and to Senior Human Relations Business Partner, Michael Lewis, in which Plaintiff complained that she was being targeted, harassed, discriminated against by Ms. Sator, on account of gender and religion.

47. Plaintiff tried to submit her complaints to the Chief Human Resources Officer, Denise Mariotti (the correct person under Defendant's EEO policies).

48. Ms. Mariotti emailed Plaintiff "As for your claims of harassment, I am happy to launch an investigation. As stated in my previous email, please let me know if you wish to schedule time to discuss these allegations."

49. Plaintiff did and the two met, however, Ms. Mariotti refused to investigate, refused a written copy of Plaintiff's complaint, told Plaintiff "sometimes Defendant is not the right fit," and then Ms. Mariotti directed Plaintiff to Ms. Reich and Mr. Lewis for the complaint, saying she had trust in the two handling the matter.

50. On June 24, 2024 Ms. Reich and Mr. Lewis met with Plaintiff remotely and via Teams to explain the findings of their investigation of Plaintiff's complaint.

51. Plaintiff's complaint was "unsubstantiated" and then Ms. Reich and Mr. Lewis informed Plaintiff that (1) her bible study was to end, (2) Plaintiff may no longer share her faith at work, and (3) Plaintiff was going on a Performance Improvement Plan ("PIP").

52. These adverse actions were contemporaneous with Plaintiff's protected activity as the adverse acts were a direct result of a good faith complaint.

53. Moreover, the adverse actions show a specific intent to harass, malign, denigrate, and harm Plaintiff over her protected class in her religion.

54. Lisa Sator issued Plaintiff the PIP on June 27, 2024.

55. The PIP allegedly pertained to Plaintiff's performance between April 15, 2024 and June 24, 2024, a time in which Plaintiff maintains there were no complaints or reasonable issues raised about her performance.

56. As noted, Defendants claim to have issued the PIP because while investigating Plaintiff's complaints about Ms. Sator, Ms. Sator had defended herself by saying Plaintiff's performance was not good.

57. Under the PIP, Plaintiff had sixty (60) days, or until August 23, 2024, to improve.

58. Not only was the PIP unwarranted, it continued to attribute other people's work to Plaintiff and make reference to completed work.

59. Despite Plaintiff having until August 23, 2024 to show improvement under the PIP, Defendant terminated Plaintiff on July 23, 2024.

60. Defendant's termination letter states that Plaintiff has not made: "substantial enough progress to believe you will be able to meet the expectations of the department" and for Plaintiff having allegedly "responded inappropriately and unprofessionally" presumably with regard to PIP and other meetings over her work.

61. Defendant harassed, discriminated against, and retaliated against Plaintiff, which were actions all motivated by Plaintiff's protected classes and protected activities.

62. Plaintiff suffered loss of wages, out-of-pocket expenses, loss of amenities of employment, emotional damages, pain, suffering, embarrassment, humiliation, alienation from society, loss of life's pleasures, loss of reputation, and other damages and harms, all to her great detriment, as a result of the foregoing.

### COUNT ONE
### Hostile Work Environment
### *Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e-2*
### Plaintiff v. Defendant

63. Plaintiff incorporates the foregoing as if set forth at length herein.

64. Defendant is an employer under 42 U.S.C. § 2000 *et. seq* as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks, in the current or preceding calendar year.

65. Plaintiff is a person and thus is protected under 42 U.S.C. §2000 *et. seq.* and has a protected class in her gender and religion.

66. Under 42 U.S.C. § 2000e-2 it shall be an unlawful employment practice for an employer – to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

67. At all times, Plaintiff was qualified as an Associate Director.

68. Defendant subjected Plaintiff to harassment by and through Plaintiff's direct supervisor Ms. Sator as she (i) made comments and engaged in conduct alleged *Supra,* which was motivated by Plaintiff's protected classes, (ii) which was unwelcome, (iii) which was severe and/or pervasive, (iv) that had the intent or effect of creating an unreasonably hostile work environment, (iv) which resulted in adverse employment actions including discipline, being placed on a PIP, and termination, and (v) this was all done by a person in a supervisory position, which establishes *respondeat superior* liability.

69. As a direct and proximate result of Defendant's harassment and discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out of pocket expenses, emotional damages, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

70. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

71. Plaintiff seeks attorney's fees and costs.

72. Plaintiff seeks equitable remedies.

WHEREFORE, Plaintiff, Aneissa Petronglo, hereby demands judgment in her favor and against Defendant, The Trustees of the University of Pennsylvania, for any and all damages and relief deemed necessary and just by the Court.

## COUNT TWO
### Gender and Religion Discrimination and Disparate Treatment
*Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e-2*
**Plaintiff v. Defendant**

73. Plaintiff incorporates the foregoing as if set forth at length herein.

74. Defendant discriminated against and disparately treated Plaintiff in relation to similarly situated employees outside her protected classes.

75. Defendant was overly critical of Plaintiff's work, placed her on a reintegration plan, placed her on a PIP, denied accommodation, placed on involuntary leave, allowed work to pile, removed bible study, denied her speaking about her faith, and ultimately terminated Plaintiff as alleged *Supra*.

76. Defendant treated similarly situated male employees more favorably.

77. Defendant treated non-Christians more favorably.

78. On information and belief Defendant replaced Plaintiff with persons outside Plaintiff's protected classes.

79. As a direct and proximate result of Defendant's disparate treatment and discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expense, emotional damages, pain and suffering, loss of enjoyment of life, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

80. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

81. Alternatively, as Defendant's foregoing conduct was motivated, in part, by discrimination on the basis of gender and/or religion, Plaintiff is entitled to a charge for mixed-motive discrimination and thus the imposition of attorney's fees.

WHEREFORE, Plaintiff, Aneissa Petronglo, hereby demands judgment in her favor and against Defendant, The Trustees of the University of Pennsylvania, for any and all damages and relief deemed necessary and just by the Court.

### COUNT THREE
### Retaliation
*Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e-2*
**Plaintiff v. Defendant**

82. Plaintiff incorporates the foregoing as if set forth at length herein.

83. Under Title VII it shall be a violation to retaliate against any person who has complained and/or opposed any conduct that is a violation of Federal discrimination law.

84. Plaintiff engaged protected activity when she complained that she was being discriminated against, harassed, and targeted by her supervisor, on account of her gender and religion.

85. Defendant took adverse actions against Plaintiff, which was/were contemporaneous or after Plaintiff's protected activity, in having denied her bible study, denying her ability to discuss faith, placing her on a Performance Improvement Plan, and terminating Plaintiff's employment.

86. The temporal proximity between Plaintiff's protected activity and the adverse employment actions give rise to an inference of retaliation.

87. Practically speaking, Plaintiff was disciplined, reprimanded, placed on a PIP, and terminated as a direct result of her complaint (i.e. "protected activity").

88. There is evidence of antagonistic and animus towards Plaintiff that gives rise to an inference of retaliation, including removing the bible study and denying Plaintiff opportunity to discuss her faith.

89. Defendant's reasons for placing Plaintiff on the PIP and denying her other activities are pretext to the underlying retaliation.

90. Defendant did not even follow its own EEO policies and procedures in handling Plaintiff's complaints ("protected activities").

91. The people responsible for investigating Plaintiff's complaints are the same individuals delivering the adverse employment actions.

92. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, pain and suffering, loss of enjoyment of life, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

93. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

WHEREFORE, Plaintiff, Aneissa Petronglo, hereby demands judgment in her favor and against Defendant, The Trustees of the University of Pennsylvania, for any and all damages and relief deemed necessary and just by the Court.

### COUNT FOUR
### Discrimination, Failure to Reasonably Accommodate, and Retaliation
*Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §12102 et. seq.*
### Plaintiff v. Defendant

94. Plaintiff incorporates the foregoing as if set forth at length herein.

95. Defendant is an employer under the ADA as it is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks, in the current or preceding calendar year.

96. Plaintiff is a qualified individual with a disability as she has "a physical or mental impairment that substantially limits one or more major life activities of such individual" and/or "being regarded as having such an impairment." 42 U.S.C.A. §12102(a) *and also* 29 C.F.R. §1630.2(g).

97. Specifically, Plaintiff's foot injury limits and/or impairs her ability to work and/or perform everyday activities.

98. Alternatively, Defendant perceived Plaintiff as disabled.

99. Plaintiff requested reasonable accommodation, which was working remote or otherwise working in a way that was approved by medical professionals.

100. Defendant denied Plaintiff reasonable accommodation.

101. Defendant failed to engage in the interactive process in good faith.

15

102. Approving Plaintiff's accommodation request would not have caused a hardship or other undue burden.

103. Defendant's failure and/or refusal to approve Plaintiff's request for accommodation, engage in the interactive process, and/or otherwise deny Plaintiff her civil rights resulted in discipline, reprimand, and termination.

104. Plaintiff engaged in protected activity when she requested an accommodation and/or took a leave of absence.

105. Defendant took adverse employment action contemporaneous or after Plaintiff's protected activity, and thus retaliated against Plaintiff, which included re-integration plan, write-ups, stock piling of work, PIP, discipline, and termination.

106. Defendant treated persons outside Plaintiff's protected class of disabled more favorably, and thus discriminated against her with regard to the PIP and termination.

107. Defendant hired and replaced Plaintiff with someone not disabled.

108. As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

109. Defendant's actions were willful and wanton and thus require the imposition of Punitive Damages.

110. Alternatively, as Defendant considered Plaintiff's disability in the foregoing discrimination and conduct, Plaintiff is entitled to a charge for mixed-motive discrimination, which entitles Plaintiff to an award of Attorney's fees.

WHEREFORE, Plaintiff, Aneissa Petronglo, hereby demands judgment in her favor and against Defendant, The Trustees of the University of Pennsylvania, for any and all damages and relief deemed necessary and just by the Court.

**COUNT FIVE**
**Harassment, Discrimination, and Retaliation**
*Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951-963*
<u>**Plaintiff v. Defendant**</u>

111. Plaintiff incorporates the foregoing as if set forth at length herein.

112. Defendant is an employer under 43 P.S. §951 *et. seq.* as it employs the requisite number of individuals (four) within the Commonwealth of Pennsylvania to be subject to the Pennsylvania Human Relations Act ("PHRA").

113. Plaintiff is an employee as she is employed by an employer.

114. Plaintiff has a protected classes in her gender, religion, and disability.

115. Defendant harassed and subjected Plaintiff to a hostile environment on the basis of her gender, religion, and disability, as alleged *Supra*.

116. Defendant discriminated against and disparately treated Plaintiff on the basis of gender, religion, and disability, as alleged *Supra.*

117. Defendant retaliated against Plaintiff for protected activity, as alleged *Supra*.

118. As a direct and proximate result of Defendant's harassment, discrimination, and retaliation, Plaintiff has loss of wages, loss of back pay, loss of front pay, out of pocket expenses, pain, suffering, mental anguish, loss of reputation, and other damages.

119. Plaintiff seeks attorney's fees and costs.

120. Alternatively, Defendant's actions were motivated by the foregoing discrimination and thus Plaintiff is entitled to attorney's fees under the mixed motive theory of liability.

WHEREFORE, Plaintiff, Aneissa Petronglo, hereby demands judgment in her favor and against Defendant, The Trustees of the University of Pennsylvania, for any and all damages and relief deemed necessary and just by the Court.

## COUNT SIX
### Retaliation
### Violation of Public Policy - *Shick v. Shirey*, 552 Pa. 590 (1998).
### Plaintiff v. Defendant

121. Plaintiff incorporates the foregoing as though set forth at length herein.

122. Under the Pennsylvania Supreme Court decision in Shick v. Shirey, 552 Pa. 590 (1998), it is a violation of public policy and thus an exception to the at-will employment status for an employer and/or individual to retaliate against an employee for having exercised his or her rights under the Workers' Compensation Act.

123. Defendant was Plaintiff's employer.

124. Plaintiff suffered a work-related injury and made a claim for Workers' Compensation benefits.

125. Defendant had light duty and sedentary positions Plaintiff could work and could have accommodated Plaintiff with remote work but chose to deny Plaintiff work and keep her out of work.

126. Defendant also refused to allow Plaintiff to communicate with peers and subordinates during this leave.

127. Defendant took no action to ameliorate Plaintiff's work while Plaintiff was on leave, resulting in an enormous backlog of tasks and assignments.

128. When Plaintiff returned from leave, she was put on a "re-integration plan", which was punitive and not part of Defendant policies or procedures.

19

129. The temporal proximity of Plaintiff's protected activity (seeking medical relief for a work-related injury) to the Defendant's adverse actions of "re-integration plan", denial of faith activities, PIP, and termination, suggest retaliation and/or evidence exists of a causal relation between the protected activity and Defendant's adverse employment actions.

130. As a direct and proximate result of Defendant's retaliation, Plaintiff has damages and harms including loss of earnings, loss of wages, out-of-pocket expenses, mental anguish, embarrassment, humiliation, loss of reputation, and other related harms.

WHEREFORE, Plaintiff, Aneissa Petronglo, hereby demands judgment in her favor and against Defendant, The Trustees of the University of Pennsylvania, for any and all damages and relief deemed necessary and just by the Court.

DEREK SMITH LAW GROUP, PLLC

*/s/ Christopher J. DelGaizo, Esquire*
Christopher J. DelGaizo, Esq.
Attorney for Plaintiff

*Attorney I.D. No. 200594*
1628 Pine Street
Philadelphia, PA 19103
T: (215) 391-4790
Fax: 215-501-5911
Email: Chris@dereksmithlaw.com

Date: August 25, 2025